# In the United States Court of Federal Claims

No. 11-201 C

(E-Filed Under Seal:  April 18, 2013)
(Reissued for Publication:  May 6, 2013)[1]

_____

|  |  |  |
|---|---|---|
| ROSS-HIME DESIGNS, INC., | ) | |
| | ) | Access to Information Developed |
| Plaintiff, | ) | Under Space Act Agreement; |
| | ) | Right to Public Inspection Under |
| v. | ) | Space Act; Protective Order |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

<u>Vytas M. Rimas</u>, Minneapolis, MN, for plaintiff.

<u>Conrad J. DeWitte, Jr.</u>, Patent Attorney, with whom were <u>Stuart F. Delery</u>, Principal Deputy Assistant Attorney General, and <u>John Fargo</u>, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  <u>Kurt G. Hammerle</u>, Intellectual Property Attorney, Office of the Chief Counsel, NASA Johnson Space Center, Houston, TX, of counsel.

## OPINION AND ORDER

HEWITT, Chief Judge

On February 26, 2013 the court issued an opinion and order granting-in-part and denying-in-part a motion filed by Ross-Hime Designs, Inc. (plaintiff), in which plaintiff sought access to protected information developed by the United States (defendant or the government) under a joint development agreement with General Motors Corporation (General Motors) and related to a robotic manipulator known as Robonaut 2, which allegedly infringes patents owned by plaintiff.  See Op. and Order of Feb. 26, 2013

---

[1] This Opinion and Order was originally filed under seal.  The parties were given until May 3, 2013 to submit their requests for proposed redactions.  Defendant filed a notice on May 3, 2013 stating that no redactions were requested by the government.  See Notice by Def. Regarding Redactions of the Ct.'s Apr. 18, 2013 Op. and Order, Docket Number (Dkt. No.) 76, at 1.  No request for redactions has been received from plaintiff.  Accordingly, the court reissues this Opinion and Order for publication without any redactions.

(reissued for publication Mar. 13, 2013) (the Opinion), Docket Number (Dkt. No.) 70, at 1-3, 27. In the Opinion, the court withheld a decision regarding access to three specific documents related to Robonaut 2 pending supplemental briefing. See id. at 20. Now before the court are Plaintiff's Motion for Relief from Protected Information Designation as to Defendant's Robonaut 2 Accused Structure Drawings and Photographs (plaintiff's Motion or Pl.'s Mot.), Dkt. Nos. 45-46, filed December 4, 2012; Defendant's Supplemental Brief Addressing Plaintiff's Exhibits 18, 19 and 20 (defendant's Brief or Def.'s Br.), Dkt. No. 71, filed March 18, 2013; and Plaintiff's Supplemental Reply in Support of Motion for Relief Addressing Defendant's Supplemental Reply and Plaintiff's Exhibits 18, 19 and 20 (plaintiff's Reply Brief or Pl.'s Reply Br.), Dkt. No. 74, filed April 8, 2013.

I.      Background[2]

The three documents that remain at issue with respect to plaintiff's Motion were submitted to the court by plaintiff as Exhibits 18, 19 and 20 to Plaintiff's Reply in Support of Motion for Relief from Protected Information Designation as to Defendant's Robonaut 2 Accused Structure Drawings and Photographs (plaintiff's Reply or Pl.'s Reply), Dkt. No. 62. See Pl.'s Reply Exs. 18-20. Exhibit 18 is an undated CAD drawing of the Robonaut 2 hand. See Tbl. of Reply Exs., Dkt. No. 62-1; Pl.'s Reply Ex. 18. Exhibit 19 is a CAD blueprint of the Robonaut 2 thumb base mount, dated November 29, 2007. See Tbl. of Reply Exs.; Pl.'s Reply Ex. 19. Exhibit 20, which is undated and labeled "R2 Hand_Forearm," is a series of sixteen slides detailing the Robonaut 2 hand and forearm through CAD drawings, diagrams and descriptions. See Tbl. of Reply Exs.; Pl.'s Reply Ex. 20.

In the Opinion, the court concluded that "the information contained in the Robonaut 2 CAD drawings [at issue] represents millions of dollars in value and would be necessary, in addition to the publicly available information, to create a working Robonaut 2 . . . and that Exhibits 18-20, in particular, contain technical know-how," which is protected as proprietary information under the protective order issued in this case. Opinion 16 (internal citations omitted). The court also recognized in the Opinion that General Motors, as a co-developer of the Robonaut 2 technology, has a proprietary interest "that may be jeopardized by disclosure of such drawings." Id.

Nevertheless, despite the proprietary nature of Exhibits 18-20, the Opinion recognized that the documents might be subject to disclosure. See id. at 19-20. Because

--------

[2] The court's Opinion and Order of Feb. 26, 2013 (reissued for publication Mar. 13, 2013), Dkt. No. 70, provides detailed background information about the circumstances surrounding plaintiff's motion for access to protected information, familiarity with which is presumed.

the Robonaut 2 technology at issue in this case was developed with General Motors under a so-called Space Act agreement, that is, under a joint development agreement pursuant to the National Aeronautics and Space Act (Space Act), Pub. L. No. 111-314, 124 Stat. 3328 (2010) (to be codified in relevant part at 51 U.S.C. §§ 20101-64), see Opinion 8, the Robonaut 2 technology is protectable as a trade secret or confidential information only "for a period of up to 5 years after [its] development," 51 U.S.C.A[3] § 20131(b)(1) (West 2012). After the five-year period, such confidential or proprietary information, to the extent that it has been "obtained or developed by the [National Aeronautics and Space Administration (NASA)] Administrator in the performance of the Administrator's functions . . . shall be made available for public inspection." See id. § 20131. This five-year limit on protection is echoed in the joint development agreement. See Resp. to Pl.'s Mot. Challenging Designation of Docs. Under Protective Order, Dkt. Nos. 53-55, at Ex. B (joint development agreement[4]) 36 (providing for five years of protection for information that was first produced by NASA under the joint development agreement and that General Motors desired be maintained in confidence). Further, under the protective order issued in this case, information that is "public knowledge" is not subject to protection. See Order of Oct. 24, 2011 (Protective Order), Dkt. No. 14, ¶ 23.

Because Exhibit 19 is more than five years old, see Pl.'s Reply Ex. 19 (showing date of November 29, 2007), and Exhibits 18 and 20 are not dated, see Pl.'s Reply Exs.

---

[3] The National Aeronautics and Space Act (Space Act), Pub. L. No. 111-314, 124 Stat. 3328 (2010) (to be codified in relevant part at 51 U.S.C. §§ 20101-64), was enacted "to codify certain existing laws related to national and commercial space programs as a positive law title of the United States Code" at title 51. Space Act § 2(a), 124 Stat. at 3328. The United States Code is published every six years by the Government Printing Office. Because the 2012 edition is not yet available and the 2006 edition does not include the Space Act, the court cites to the Space Act as it appears in the United States Code Annotated (U.S.C.A.), which is current through December 2012.

[4] The joint development agreement was executed on December 19, 2006. See Resp. to Pl.'s Mot. Challenging Designation of Docs. Under Protective Order (defendant's Response), Dkt. Nos. 53-55, at Ex. B (original joint development agreement) 16, and was in effect for a term of up to five years, see id. at 14. On October 15, 2010, an amendment to the joint development agreement was executed, which replaced the original agreement and which remains in effect until December 31, 2013. See id. at Ex. B (joint development agreement, as amended) 41, 46. The relevant terms of each agreement are substantially similar, if not identical. The court cites to the amended joint development agreement, which is the agreement currently in effect, when discussing the joint development agreement. Both are included in Exhibit B to defendant's Response, along with an additional amendment to each agreement, respectively. Neither of the additional amendments is relevant to the matters addressed in this Opinion and Order. The court cites to Exhibit B using the page numbers assigned by the court's Case Management/Electronic Case Files system, which appear in the top right corner of the document pages.

3

18, 20, the court ordered supplemental briefing to address: (1) when Exhibits 18 and 20 were created; (2) whether each of Exhibits 18-20 was obtained or developed by the NASA Administrator; and (3) whether being subject to public inspection under the Space Act brings documents to "public knowledge" within the meaning of paragraph 23 of the Protective Order, see Opinion 20; cf. Protective Order ¶ 23 (stating that information that is "public knowledge" is not subject to protection).

In its supplemental briefing, defendant states that the JPEG file that became Exhibit 18 was created on October 30, 2007, Def.'s Br. 1, making the information contained in Exhibit 18 more than five years old. Defendant also states the JPEG file that became Exhibit 18 "was created by a NASA employee" and that "it would be reasonable for one to say that what is depicted in . . . Exhibit 18 was either obtained or developed by the NASA Administrator." Id. at 2-3. With respect to Exhibit 19, which is also more than five years old, see Pl.'s Reply Ex. 19 (showing date of November 29, 2007), defendant states that "[t]he legend on the drawing indicates that it was created by a NASA employee" and concludes that "it would be reasonable for one to say that what is depicted in . . . Exhibit 19 was either obtained or developed by the NASA Administrator." Def.'s Br. 3. Therefore, because Exhibit 18 and Exhibit 19 are both more than five years old and were both obtained or developed by the NASA Administrator, they are both eligible for public inspection pursuant to the Space Act. Cf. 51 U.S.C.A. § 20131 (stating that information that has been "obtained or developed by the [NASA] Administrator in the performance of the Administrator's functions . . . shall be made available for public inspection," with an exception for five years of protection for proprietary information resulting from a Space Act agreement).

With respect to Exhibit 20, defendant states that the file that became Exhibit 20 was created as a Microsoft PowerPoint "template computer file" on August 30, 2007, but that "the content of the computer file was built on files dated July 18, 2011 and December 11, 2011" and that the content contained in those files "dates back to the timeframe of April 2009 through June 2009." Def.'s Br. 1-2. Defendant also states that "it would be reasonable for one to say that what is depicted in . . . Exhibit 20 was either obtained or developed by the NASA Administrator." Id. at 4. Therefore, if the court finds that the information contained in Exhibit 20 is more than five years old, it is also eligible for public inspection under the Space Act. See 51 U.S.C.A. § 20131.

The court now considers whether the information contained in Exhibit 20 is more than five years old and therefore eligible for public inspection under the Space Act and, to the extent that each of Exhibits 18-20 is eligible for public inspection under the Space Act, whether that brings the documents to "public knowledge" within the meaning of paragraph 23 of the Protective Order.

II.     Legal Standards

Pursuant to the Space Act, in general, "[i]nformation obtained or developed by the [NASA] Administrator in the performance of the Administrator's functions . . . shall be made available for public inspection." 51 U.S.C.A. § 20131(a). There are three exceptions to this general rule: "information . . . authorized or required by Federal statute to be withheld[,] . . . [information] classified to protect the national security," and information that results from a Space Act agreement, as further provided in the Space Act. See id.

With respect to information resulting from a Space Act agreement, the Space Act further provides that, to the extent that the information "would be a trade secret or commercial or financial information that is privileged or confidential under the meaning of [the Freedom of Information Act] if the information had been obtained from a non-Federal party participating in [the Space Act] agreement," it may be protected "for a period of up to 5 years after [its] development." Id. § 20131(b). In other words, information obtained by the NASA administrator as a result of a Space Act agreement that would otherwise be eligible for permanent protection from disclosure under the Freedom of Information Act because of its proprietary nature, cf. Freedom of Information Act, 5 U.S.C. § 552(b)(4) (2006) (exempting "trade secrets and commercial or financial information . . . [that is] privileged or confidential" from disclosure indefinitely), is expressly limited by the Space Act to protection "for a period of up to 5 years after [its] development," see 51 U.S.C.A. § 20131(b). After the five-year period ends, the information "shall be made available for public inspection," unless a federal statute provides otherwise or the information is classified to protect national security. Id. § 20131(a).

Although the five-year period runs from the date of development, the court noted in the Opinion that, in this case, "to the extent that an improvement constitutes new Data under the [joint development] agreement and new protectable information under the [Space Act], protection would . . . be available from the date of creation of such an improvement." Opinion 19; see also Def.'s Resp. Ex. B (joint development agreement) 34 (defining "Data" as "recorded information," including "data of a scientific or technical nature"). The court also noted in the Opinion that the date of development is a question of fact. Opinion 18-19.

III.    Discussion

A.    Exhibit 20 Is Not Subject to Disclosure

Defendant argues that protection for the information contained in Exhibit 20 "should run from no earlier than April 2009." Def.'s Br. 4. In support of this position, defendant explains that "[a] NASA employee created . . . Exhibit 20 by collecting the content created by General Motors and the content created by NASA into the computer

file." Id. at 3. Defendant further explains that the content created by the General Motors employee was created during the period from April 2009 to June 2009 and that the content created by NASA employees was contained in computer files dated July 18, 2011 and December 11, 2011. Id. at 4. Defendant contends that the content created by General Motors employees and the content created by NASA employees constitutes new Data under the joint development agreement and is therefore protectable from the date of its creation instead of from the 2007 date on which the PowerPoint template was created. Id. Plaintiff responds, "Defendant admits that . . . Exhibit[] . . . 20 [was] first created more than five years ago." Pl.'s Reply Br. 2; cf. Def.'s Br. 1-2 (stating that the PowerPoint template file that became Exhibit 20 "was created on August 30, 2007" but that "the content of the computer file was built on files dated July 18, 2011 and December 11, 2011," and that the content of those 2011 computer files was originally "created by a General Motors employee" between April 2009 and June 2009). Plaintiff also states that "Defendant fails to mention that the files . . . Exhibit 20 was based upon, were also published by NASA." Pl.'s Reply Br. 2 (citing Pl.'s Mot. Ex. 13, Dkt. No. 46-8, at 1 (fig. 1), 2 (figs. 3, 5), 3 (figs. 6-8), 5 (fig. 14)).

The court understands defendant's reference to the PowerPoint template computer file to mean a file containing the format of the PowerPoint presentation that later became Exhibit 20, as distinguished from the content of Exhibit 20, which defendant asserts was created mostly in 2009 and then added to the template from files built in 2011. Cf. Def.'s Br. 3-4 (describing the creation of Exhibit 20). Although the court cannot discern fully the distinction between format and content from an examination of Exhibit 20, the court understands defendant to assert, at the least, that the images contained in Exhibit 20 were created after the 2007 template. Because the text contained in Exhibit 20 would be largely meaningless without the images, the court concludes that, even if the text were part of the template computer file, the Data contained in Exhibit 20--that is, the information that it records--was created, at the earliest, in April 2009. Cf. Def.'s Resp. Ex. B (joint development agreement) 34 (defining "Data" as "recorded information," including "data of a scientific or technical nature"). Accordingly, the court holds that the information contained in Exhibit 20 is not more than five years old and, therefore, is not subject to disclosure under the Space Act provision allowing for protection of information resulting from a Space Act agreement for a period limited to five years. Cf. 51 U.S.C.A. § 20131(b).

To the extent that plaintiff asserts that the content of Exhibit 20 has been previously published by NASA, see Pl.'s Br. 2; cf. Protective Order ¶ 23 (stating that information that is "public knowledge" is not subject to protection), plaintiff's assertion is not supported. Although plaintiff is correct that Exhibit 13, a published paper, contains some of the same images as Exhibit 20, the overlap is minimal. Exhibit 20 contains approximately fifty separate images, see Pl.'s Reply Ex. 20, as compared to Exhibit 13, which contains seven images cited by plaintiff in support of its assertion that the files that

6

Exhibit 20 was based on were published by NASA, see Pl.'s Reply Br. 2 (citing Ex. 13, at 1-3, 5 (figs. 1, 3, 5-8, 14)).  Some of the images in Exhibit 13 appear in Exhibit 20 in identical or nearly identical form, but others include additional labels not present in Exhibit 13, and the majority of images in Exhibit 20 do not appear in Exhibit 13. Compare Pl.'s Mot. Ex. 13, at 1-3, 5, with Pl.'s Reply Ex. 20.  The court again concludes that the information contained in Exhibit 20, taken as a whole, is proprietary in nature. Cf. Opinion 16  (concluding that "the information contained in the Robonaut 2 CAD drawings [at issue] represents millions of dollars in value and would be necessary, in addition to the publicly available information, to create a working Robonaut 2 . . . and that Exhibits 18-20, in particular, contain technical know-how," which is protected as proprietary information under the protective order issued in this case (internal citations omitted)).  Further, to the extent that some of the images contained in Exhibit 20 appear in the same or similar format in Exhibit 13, plaintiff already has access to those images.

Because the court concludes that defendant's proprietary information designation was proper with respect to Exhibit 20 and that Exhibit 20 is not subject to disclosure under the Space Act, plaintiff's Motion, to the extent that it seeks greater access to Exhibit 20, is DENIED.

B.      Exhibit 18 and Exhibit 19 Are Subject to Disclosure

Defendant argues that "a document does not become publicly available under statute or NASA regulations merely because a document was created more than five years ago," asserting, instead, that such a document "must undergo a review to determine whether the document can be released."  Def.'s Br. 7.  In support of this position, defendant cites to the regulations contained in part 1206 of title 14 of the Code of Federal Regulations, see id. at 5, which "establishes the policies, responsibilities, and procedures for the release of [NASA] Agency records . . . to members of the public," 14 C.F.R. 1206.100 (2013).  These regulations were promulgated pursuant to the authority of the Freedom of Information Act, see 5 U.S.C. § 552(a)(4)(A)(i) ("In order to carry out the provisions of this section, each agency shall promulgate regulations . . . .").  Compare 14 C.F.R. § 1206.200 (describing types of records to be made available to the public by NASA), with 5 U.S.C. § 552(a) describing types of records to be made available to the public by agencies, generally).  Accordingly, the exemptions contained in the NASA regulations track those contained in the Freedom of Information Act.  Compare 14 C.F.R. § 1206.300(b) (describing nine exemptions for NASA records), with 5 U.S.C. § 552(b) (describing nine exemptions for agency records generally).

According to defendant, pursuant to the regulations, NASA must first provide notice to a corporation if it "receives a request for information obtained from the corporation when the requested information may arguably be exempt from disclosure because it is a trade secret, commercial information, or financial information," and then

must "consider[] any objections by the corporation" before making the documents publicly available. See Def.'s Br. 6 (citing, inter alia, 14 C.F.R. § 1206.610(a) (providing for notice), (e) (providing for consideration of corporation's objections)). The requested document will only be released, defendant states, "if it does not fall within one of the exceptions to release provided by NASA regulations." Id. (citing 14 C.F.R. § 1206.200(c)(1)).

Defendant cites one particular exemption contained in the regulations, "exemption 4," see Def.'s Br. 8 (citing 14 C.F.R. § 1206.300(b)(4)), which protects "[t]rade secrets and commercial or financial information obtained [by NASA] from a person which is privileged or confidential" from disclosure, 14 C.F.R. § 1206.300(b)(4); cf. 5 U.S.C. § 552(b)(4) (protecting "trade secrets and commercial or financial information obtained from a person and privileged or confidential" from agency disclosure generally). Defendant argues that the documents at issue are protected by "exemption 4 because they contain information developed as part of an ongoing joint development project where NASA and General Motors engineers work together as one team to develop the Robonaut 2 technology." Def.'s Br. 8.

Plaintiff responds that, "assuming . . . part [1206] to be applicable, Defendant has waived such provisions by not raising this as an objection in its response to Plaintiff's Document Requests on March 21, 2012." Pl.'s Reply Br. 2. Plaintiff also contends that, to the extent that the notice provisions of the regulations apply, "[b]y now Defendant should have notified General Motors as the asserted submitter of . . . Exhibits 18, 19 and 20." Id. at 3.

Defendant's argument that exemption four applies ignores the plain language of the Space Act pertaining to disclosure of information resulting from Space Act agreements. The Space Act provides that information "that would be a trade secret or commercial or financial information that is privileged or confidential under the meaning [the Freedom of Information Act] if the information had been obtained from a non-Federal party participating in [the Space Act] agreement" may be protected "for a period of up to 5 years after [its] development." 51 U.S.C.A. § 20131(b). Because the Space Act specifically provides for more limited protection of information resulting from a Space Act agreement, the regulation establishing a broader exemption for other types of NASA information in accordance with the Freedom of Information Act does not apply. Cf. id. (stating that if information resulting from a Space Act agreement would have been protected as proprietary under the Freedom of Information Act, it is subject to the narrower protection of the five-year limit under the Space Act). Indeed, the cases cited by defendant in support its position that exemption four of the regulation should apply, see Def.'s Br. 8 (citing Freeman v. Bureau of Land Mgmt., 526 F. Supp. 2d 1178, 1188 (D. Or. 2007), and Matthews v. USPS, No. 92-1208-CV-W-8, slip op. at 6 (W.D. Mo. Apr. 15, 1994)), address the applicability of 5 U.S.C. § 552(b)(4)--exemption four to the

8

Freedom of Information Act--only in situations in which the information at issue is wholly unrelated to a Space Act agreement or NASA, cf. Freeman, 526 F. Supp. 2d at 1184, 1186 (stating that the plaintiff "relie[d] on 5 U.S.C. § 552(b)(4)" in arguing that a document containing "findings and conclusions" of a government-funded study of the plaintiff's proposed mining project should be exempt from disclosure under the Freedom of Information Act); Def.'s Br. Ex. M (Matthews) 6 (holding that portions of technical drawings were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(4) because they were "based on information supplied by [a Japanese computer corporation] relating to a computer system [the corporation] designed and sold to the [United States Postal Service]").

The court concludes that public disclosure of Exhibit 18 and Exhibit 19 is governed by the Space Act provision to be codified at 51 U.S.C. § 20131(b), which pertains specifically to proprietary information obtained by NASA as a result of Space Act agreements, instead of by 5 U.S.C. § 552(b)(4), which pertains to proprietary information obtained by agencies in general, or by 14 C.F.R. §1206.300(b)(4), which pertains to proprietary information obtained by NASA in general. The court further concludes that Exhibit 18 and Exhibit 19 are each subject to public inspection under the Space Act because both are more than five years old and were obtained by the NASA Administrator as a result of a Space Act agreement. Cf. 51 U.S.C.A. § 20131. Neither party has addressed in its briefing the specific question of whether being subject to public inspection under the Space Act brings a document to "public knowledge" within the meaning of paragraph 23 of the Protective Order.

The NASA regulations regarding public disclosure provide that NASA shall make records properly requested "promptly available to any person," and that NASA shall maintain an electronic reading room containing records that have been made available and as to which NASA has determined that they will likely be the subject of similar requests. See 14 C.F.R. § 1206.200(b)(iv), (c). Although there is no evidence before the court to suggest that Exhibit 18 or Exhibit 19 has been requested or made available pursuant to the regulations (or would therefore be maintained in NASA's electronic reading room), the court understands that the documents would be made available if properly requested. Cf. 51 U.S.C.A. § 20131 (requiring information to be made available for public inspection if it is not otherwise authorized by federal statute to be withheld, classified to protect national security, or within the five-year period for protection of information resulting from Space Act agreements); 14 C.F.R. § 1206.200(c) (requiring information to be promptly made available after a proper request). The court considers whether this brings Exhibit 18 and Exhibit 19 within the meaning of paragraph 23 of the Protective Order.

"Public knowledge" is not defined in the Protective Order. However, the joint development agreement provides that "the Parties will not be restricted in the use,

9

disclosure, or reproduction of Data provided under this Agreement that . . . is publicly available at the time of disclosure or thereafter becomes publicly available without breach of this Agreement." Def.'s Resp. Ex. B (joint development agreement) 35. Because Exhibit 18 and Exhibit 19 are subject to public inspection, they appear to be within the scope of "publicly available" information described in the joint development agreement, making them free from restrictions under that document applicable to proprietary information. Cf. id. Accordingly, the court holds that the information contained in Exhibit 18 and Exhibit 19 has become "public knowledge" within the meaning of paragraph 23 of the Protective Order and is no longer subject to the restrictions and obligations relating to proprietary information pursuant to the Protective Order. Cf. Protective Order ¶ 23 ("The restrictions and obligations relating to Proprietary Information . . . shall not apply to any information that the parties or the appropriate Supplying Owner agree, or the Court rules, is public knowledge or becomes public knowledge . . . .").

Because the court concludes that Exhibit 18 and Exhibit 19 are subject to public inspection under the Space Act and therefore contain information that is within the meaning of "public knowledge" in paragraph 23 of the Protective Order, plaintiff's Motion, to the extent that it seeks access to Exhibit 18 and Exhibit 19 for its principal, Mark Rosheim (Mr. Rosheim), is GRANTED.

IV.    Conclusion

For the foregoing reasons, plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART. Mr. Rosheim is permitted access to Exhibit 18 and Exhibit 19 but is not permitted access to Exhibit 20. The parties SHALL FILE a joint status report at or before 5:00 p.m. Eastern Daylight Time on Friday, May 10, 2013, proposing a revised pretrial schedule.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge

10